ANDREW ARMBRUSTER, RESPONDENT, v. HIRAM E. WILSON, APPELLANT.

*Right of distraint — R. S., pt. 3, chap. 8, tit. 11 — effect of a failure in the charter of a city to provide for officers to assess the damages — it suspends, but does not repeal the law.*

Upon the trial of this action of replevin, brought to recover the possession of a cow, it appeared that the defendant, within the territorial limits of the city of Rochester, distrained the plaintiff's cow, damage-feasant, and kept the same in his possession for the period of twelve days, refusing to deliver the same after demand, and omitting to institute any proceedings for the purpose of having his damages assessed by fence-viewers, as provided in title 11, chapter 8 of part 3 of the Revised Statutes. He claimed that this statute had been abrogated as to the city of Rochester, as the provisions of the city charter were inconsistent with and repugnant to it, and that the rule of the common law prevailed within the limits of the city.

*Held,* that although the failure of the legislature to provide any officer to take the place of the fence-viewers, to whom, by the terms of the statute, the distrainor was required to apply to have his damages assessed, had rendered the statute inoperative in the city of Rochester, it could not be implied therefrom that the legislature intended to interfere with the existing law on the subject of distraint and to restore the common law to the territory included within the city limits.

That the defendant acted at his peril, and if he was unable to comply with the provisions of the statute for the reason that the officers who were to assess the damages did not exist, or could not be found within the time prescribed by the statute, then the seizure was unlawful, and authorized the owner to bring replevin to recover possession of his property.

APPEAL from a judgment of the Monroe County Court, in an action of replevin, to recover the possession of a cow.

The jury found a verdict for the plaintiff, and assessed the value of the property at forty-five dollars and the damages for detention at seven dollars. At the close of all the evidence the court held that there was no dispute as to the material facts, and as a matter of law that the plaintiff was entitled to judgment, submitting to the jury the question of damages.

*George H. Humphrey*, for the appellant.

*Sullivan & Morris*, for the respondent.

BARKER, J.:

By the bill of exceptions it appears that the defendant, within the territorial limits of the city of Rochester, distrained the plaintiff's cow, damage-feasant, and kept the same in his possession for the period of twelve days, and refused to deliver her to the plaintiff upon his demand. During all the time the defendant had possession of the cow he omitted to institute any proceedings for the purpose of having his damages assessed by fence-viewers, as provided in title 11, chapter 8, part 3 of the Revised Statutes, entitled, "of distraining cattle and other chattels doing damage, and of distraining in other cases."

The defendant contends that this statute has been abrogated as to the city of Rochester, and, in cases of distress, arising within its territorial limits, the rule of the common law prevails. The city of Rochester was incorporated in the year 1834. (See Session Laws of that year, chap. 199.) At that time the provisions of the statute were in full force and effect and applicable to the territory now embraced within the city limits.

The appellant claims that the provisions of the city charter are inconsistent with and repugnant to the statute on the subject of distress and are impliedly repealed, and the intention of the legislature to abrogate the same as to the city of Rochester is fairly inferred from the omission to create a public officer authorized to discharge the duties of fence-viewers. It must be conceded that unless there is a fence-viewer, then the statute necessarily becomes inoperative. Whenever a distress is made of cattle, the statute requires the person making the same to apply, within twenty-four hours thereafter, to two of the fence-viewers of the town to appraise the

damage. (Sec. 1.) The assessors and commissioners of highways, located in any town, are authorized to discharge the duties of fence-viewers in their respective towns. (1 R. S., 340.) The territory embraced within the city limits ceased to be a part of the several towns from which it was taken, and the assessors and highway commissioners of those towns cannot act as fence-viewers in a case of distress arising within the city limits. By the charter, a board of assessors and highway commissioners were created, each possessing the powers and charged with the duties therein specifically mentioned. (See present charter, Laws of 1880, chap. 14, §§ 8–149.) We incline to the opinion that these officers are not authorized to act as fence-viewers in cases of distress made under the provisions of the Revised Statutes. The assessors and highway commissioners of the several towns in the State are authorized to act as fence-viewers only by force of the statute already referred to. No such power is, in terms, conferred on the assessors and highway commissioners for the city, and the nature and character of their duties are, in most respects, unlike those imposed upon the same class of officers for the towns. There is no clause of the charter which, in terms, abrogates the provisions of the Revised Statutes in cases of distress arising in the city, nor is any reference whatever made to the subject. We are unable to discover any intention of the legislature to repeal or interfere with the provisions and operations of the general laws then in force on the subject of distress. The omission to provide the necessary instrumentality to enforce the law within the city limits does not furnish satisfactory evidence that the legislature intended to repeal the statute, and restore the harsh rules of the common law on the subject of distress. It is the undoubted rule that repeals by implication are not favored. Where there is no repealing clause in a later statute, and that and a former one can stand together and both have effect, they will both have effect and be regarded as in force. But where a later statute, not purporting to amend a former one, covers the whole subject and was intended to furnish the only law upon the subject, the former statute must be held to be repealed by necessary implication. (*Heckmann* v. *Pinkney*, 81 N. Y., 215; *People* v. *The Gold and Stock Tel. Co.*, 98 id., 67; *U. S.* v. *Tynen*, 11 Wall., 88; *People* v. *Jaehne*, 4 Central Rep. 165.)

The omission by the legislature to create the office of fence-viewers for the city of Rochester may be regard as unintentional. It occasionally occurred, in the affairs of the State, that its general laws become inoperative for a period of time in certain and limited localities, because there has been a failure on the part of the legislature to provide the necessary officers and tribunals to carry into effect the provisions of existing laws. It is impossible to believe that the legislature, in creating a municipal government for the inhabitants living within the limits of the city of Rochester, intended to interfere with the existing law on the subject of distress and restore the common law, which permitted the party making the distress to keep the cattle seized in his own possession for an unlimited period of time without giving notice to the owner, and that such detention would be lawful until the latter should make a tender of amends. It has been repeatedly held that if a party making a distress of animals, damage-feasant, failed to comply with the requirements of the statute, he was liable as a trespasser *ab initio.* The special remedy given by the statute, as a means of securing indemnity for the damages sustained, is an addition to the common-law right of action for damages, and the injured party has an election which he will pursue. The distrainor acts at his peril, and if he is unable to comply with the provisions of the statute for the reason that the officers who are to assess the damages do not exist, or cannot be found within the time prescribed by statute thereafter, then the seizure is unlawful and the owner may bring replevin to recover the possession of his property. This was the defendant's position, and the seizure and detention of the cow was unlawful.

If assessors for the city were authorized to act as fence-viewers, as the respondent contends, then it is conceded by the appellant that the detention was unlawful and the judgment should be affirmed. But, as has been expressed, we are of the opinion they did not possess such powers.

SMITH, P. J., HAIGHT and BRADLEY, JJ., concurred.

Judgment affirmed.