**QUICK v. DISTRICT OF COLUMBIA.**

No. 854.

Municipal Court of Appeals for the District of Columbia.

Argued Sept. 26, 1949.

Decided Nov. 16, 1949.

Michael J. Keane, Jr., Washington, D. C., with whom Karl Michelet, Washington, D. C., was on the brief, for appellant.

Edward A. Beard, Assistant Corporation Counsel, Washington, D. C., with whom Vernon E. West, Corporation Counsel, and Chester H. Gray, Principal Assistant Corporation Counsel, Washington, D. C., were on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

On November 24, 1948, appellant was tried and convicted under section 10(b) of the District of Columbia Rent Act.[1] That section provided: "Any person who willfully violates any provision of this Act or any regulation, order, or requirement thereunder, * * * shall be prosecuted therefor * * * and shall upon conviction be fined not more than $1,000 or imprisoned for not more than one year, or both." Imposition of sentence was postponed awaiting a report of the probation officer and disposition of a motion. On July 13, 1949, appellant was sentenced to pay a fine of $200.

This appeal raises the single question of the jurisdiction of the trial court to impose the sentence in view of the fact that, after conviction but before sentence, section 10(b) of the Rent Act (the section under which appellant was prosecuted) was stricken from the Act. Appellant contends and the government concedes that sentence under the nonexistent provision of the Act was void unless jurisdiction to impose it was preserved by a saving clause. This position is in accord with the well established principle that: "In case a statute is repealed or rendered inoperative, no further proceedings can be had to enforce it in pending prosecutions unless competent authority has kept the statute alive for that purpose." United States v. Chambers, 291 U.S. 217, 54 S.Ct. 434, 435, 78 L.Ed. 763, 89 A.L.R. 1510.

Section 1(b) of the Rent Act,[2] originally enacted December 2, 1941, to become effective January 1, 1942, provided:

"The provisions of this Act, and all regulations, orders, and requirements thereunder, shall terminate on December 31, 1945, except that as to offenses committed, or

1. Code 1940, Supp. VI, § 45—1610(b).

2. Code 1940, Supp. VI, § 45—1601(b).

rights or liabilities incurred, prior to such expiration date, the provisions of this Act and such regulations, orders, and requirements, shall be treated as still remaining in force for the purpose of sustaining any proper suit, action, or prosecution with respect to any such right, liability, or offense."

The Rent Act has been successively extended, and to some extent amended, by subsequent legislation. Extension has been accomplished by striking out the termination date in section 1(b) above quoted and inserting a later date. Thus on April 29, 1948, the Act, which was then to expire on April 30, 1948, was extended by inserting a new expiration date of March 31, 1949.[3] It was during this extension that appellant was tried and convicted. The Act was next extended for one month, that is, to April 30, 1949.[4] On April 19, 1949, the now existing extension was enacted, inserting the expiration date of June 30, 1950.[5] This latest extension act also amended the Rent Act in some particulars. One of the amendments, section 6 of the extension act, provided: "Section 10 of such Act, as amended, is amended by striking out subsection (b) thereof." This amendment, striking out the criminal sanctions imposed by the Act, gives rise to the question before us.

Despite the numerous extension and amendatory acts, there has been in existence since original enactment only one Rent Act for the District of Columbia. The Act has never been allowed to expire but has been extended each time prior to the then expiration date. The various amendments have not changed the basic purposes of the Act. The substance of the law, namely, establishment of maximum rent ceilings and minimum service standards and protection of possession of tenants, has remained unchanged. For present purposes at least the Rent Act may be considered as effective since January 1, 1942, with an expiration date of June 30, 1950. By the Act of April 19, 1949, the criminal enforcement provision of the Rent Act was stricken. Was it

the purpose of Congress that prosecutions under the stricken section should continue with respect to violations committed while the section was in force?

The saving clause in section (1) (b) was part of the original Rent Act. That section has been changed only by change in the expiration date. It provides that as to offenses committed prior to the expiration date of the Act the provisions of the Act shall remain in force for the purpose of prosecutions with respect to such offenses. It appears to us that this saving clause looks forward to the time when the Act shall have expired, that is, it is to become effective only in the period following the final expiration date of the Act. The Act however has not expired; the effective expiration date has not arrived. In our opinion the saving clause was not intended to become operative while the basic law continued to exist.

We think it would require a forced interpretation to hold that this saving clause, directed in express language at the expiration date of the Act, means that if before expiration of the Act the criminal sanctions are eliminated prosecution for prior acts are saved. We think it most significant that section 6 of the amendatory Act, striking section 10(b) of the original Act, included no saving clause and made reference to none. Had Congress intended that pending prosecutions should be saved, it seems reasonable that such intention would have been declared in express language. Section 10 (b) had continued a part of the original Act for over seven years. We cannot assume that Congress reached a decision to strike this section without full consideration of the effect of such action. The basic law of rent control was to continue but criminal prosecutions under it were to be eliminated. Violations of the Act previously deemed criminal were no longer to be so considered, although the Act in its basic purposes was to continue. Congress evidently decided either that criminal en-

3. Public Law, 507, 80th Cong., 2d Sess. 62 Stat. 205.

4. Public Law 34, 81st Cong., 1st Sess. 63 Stat. 30.

5. Public Law 45, 81st Cong., 1st Sess. 63 Stat. 48.

forcement of the Act was a mistake from the beginning or that criminal enforcement was no longer necessary to effect the purposes of the Act. Without definite expression by Congress to the contrary, we conclude that Congress by striking section 10 (b) intended not only that there should be no criminal prosecution for future acts but also that pending prosecutions should cease.

The same result may be reached from another view. The language of the saving clause is that "the provisions of this Act" shall be treated as remaining in force, etc. Section 10(b) having been stricken is no longer a provision of "this Act" and therefore not covered by the saving clause.

The government also relies on the general saving clause contained in 1 U.S.C.A. § 109, which provides:

"The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability. The expiration of a temporary statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the temporary statute shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

■ That section applies to the repeal or expiration of a statute and the Rent Act has neither been repealed nor has it expired. It may be said that section 10(b) of the Act was repealed when by amendment it was stricken from the Act. However, in our opinion, this general saving clause does not apply when a section, not complete in itself but merely part of an enforcement section, is stricken from an existing Act without a substitute of any kind for the stricken section.

Reversed.

CAYTON, Chief Judge (dissenting).

I earnestly regret the necessity of filing a dissent in this case since it is highly unlikely that there will be other appeals like this one, and hence there need be little concern as to the effect of the decision by way of precedent.

(It was pointed out in the Congressional debates that criminal prosecutions had been deemed necessary in only about fifteen cases out of more than 100,000 which had been before the Rent Administrator. See 95 Cong.Rec. 3450, Mar. 29, 1949 et seq.)

Nevertheless, though this case stands alone, it should be decided according to law and the defendant's fine should not be remitted unless authorized by law. It should be noted that this defendant had been tried and convicted of willful violations of the Rent Act in that he rented certain premises without first filing with the Rent Administrator an application for a rent ceiling thereon, and that he demanded, received, and retained rent in excess of the legal ceiling. It was after his conviction and while he was awaiting sentence that the criminal enforcement provisions were deleted from the Act.

The clause here in dispute, as amended, reads:

"The provisions of this chapter, and all regulations, orders, and requirements thereunder, shall terminate on June 30, 1950, except that as to *offenses* committed, or rights or liabilities incurred, prior to such expiration date, the provisions of this chapter and such regulations, orders, and requirements, shall be treated as still remaining in force for the purpose of sustaining any proper suit, action, or *prosecution* with respect to any such right, liability, or *offense*." [1]

The clause above quoted applies clearly and specifically to criminal prosecutions instituted before the termination date of the Act. The inclusion of such words as "offenses committed" and "prosecution" establishes that criminal actions were to be preserved, along with any civil suits and actions involving rights and liabilities fixed by the Act. "The terms 'crime,' 'offense,'

---

1. Code 1940, Supp. VI § 45—1601(b). (Emphasis added.)

514

and 'criminal offense' are all synonymous, and ordinarily used interchangeably, and include any breach of law established for the protection of the public, as distinguished from an infringement of mere private rights".[2] Similarly, the word "prosecution" usually denotes a criminal action.[3] With these words in the saving clause, clear and unambiguous on their face, I think that only under a strained construction of the clause can it be held that pending criminal prosecutions were not covered.

Nor is it without significance that in extending the Act, this particular clause was one of the few amended and thus was specifically considered by Congress. When the new termination date was fixed, the legislature could easily, in the same amendment, have struck' or changed other words in the clause, such as "offenses" and "prosecutions." And of course it could have specified that pending criminal prosecutions like this one, begun but not completed, should be dropped. Congress did neither. The Act, including the clause in question, was continued in force.[4]

Although this is a criminal prosecution, based upon a temporary statute and one in derogation of the common law, thereby generally entitling defendant to a strict interpretation of the statute, courts must accept a statutory provision which is clear on its face. Nor can we infer the repeal of a saving clause because a companion part of the Act has been repealed; we must give a reasonable construction to the whole. Penal statutes must not be so strictly construed as to defeat the purpose of the Act or the intent of the legislature.[5] I think therefore that in view of the clear meaning of the saving clause itself, and in the absence of any authority or sound reason to support a contrary holding, the judgment should Be affirmed.

2. State v. West, 42 Minn. 147, 43 N.W. 845, 847; State v. Slowe, 230 Wis. 406, 284 N.W. 4. See also 29 Words and Phrases, Perm.Ed., pages 217–218, Offense.
3. United States v. Reisinger, 128 U.S. 398, 9 S.Ct. 99, 32 L.Ed. 480.
4. The question in this case, whether by the repeal of the criminal provisions, it was intended to end all prosecutions already instituted, does not appear to have been considered by Congress. Apparently the chief reason for the repeal of the criminal provision was to make the local Act consistent with the National Rent Control Act, from which criminal enforcement provisions had been dropped earlier. The repealing amendment occasioned little debate on the floor of either House. See 95 Cong.Rec. 3450, Mar. 29, 1949 et seq.
5. Neufield v. United States, 73 App.D.C. 174, 118 F.2d 375, certiorari denied Ruben v. United States, 315 U.S. 798, 62 S.Ct. 580, 86 L.Ed. 1199; Fields v. United States, 82 U.S.App.D.C. 354, 164 F.2d 97, certiorari denied 332 U.S. 851, 68 S.Ct. 355, 92 L.Ed. 421, rehearing denied 333 U.S. 839, 68 S.Ct. 607, 92 L.Ed. 1123.